## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RHONDA WASHINGTON NOVAK, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| INSIGHT GLOBAL, LLC, PAYPAL HOLDINGS, INC., and ROBERT YULANG, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>COMPLAINT FOR DAMAGES</u>

COMES NOW Plaintiff Rhonda Washington Novak, by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Insight Global, LLC, Paypal Holdings, Inc., and Robert Yulang (*collectively*, "Defendants"), respectfully showing the Court as follows:

# I.  JURISDICTION AND VENUE

### 1.

Plaintiff brings the above-captioned case pursuant to:  (a) 29 U.S.C. §§ 201, *et seq.,* the Fair Labor Standards Act of 1938, as amended, ("FLSA") for unpaid overtime wages and retaliation; (b) the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981") for race discrimination and retaliation; and (c) laws of the State of Georgia for breach of contract.

### 2.

The United States District Court for the Northern District of Georgia ("Court") is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 because the above-captioned complaint involves the laws of the United States and with supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the State law claim arises from the same nucleus of operative facts as the Federal law claims.

### 3.

Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant Insight Global, LLC, resides and/or maintains a place of business in the Northern District of Georgia, Atlanta Division, and the unlawful conduct forming the basis of the above-captioned complaint occurred in the Northern District of Georgia, Atlanta Division.

## II. PARTIES

4.

Plaintiff Rhonda Washington Novak ("Novak") is a fifty-six (56) year old African-American female, who is a citizen of the United States, resident of the State of Georgia, subject to this Court's jurisdiction, and entitled to bring the claims asserted in the above-captioned case.

5.

At all relevant times, Novak was an "employee" of Defendants Insight Global, LLC, and Paypal Holdings, Inc., within the meaning of, among other laws, the FLSA, 29 U.S.C. § 203, and Section 1981.

6.

Defendant Insight Global, LLC, ("Insight Global") is a Delaware limited liability staffing company affecting inter-State commerce through facilities across the United States and subject to the Court's jurisdiction with a principle office located in Dunwoody, Georgia.

7.

Insight Global operates a facility and corporate headquarters located at 1224 Hammond Drive, Suite 1500, Atlanta, Georgia.

8.

Insight Global is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203(d).

9.

Insight Global is covered by the FLSA because Insight Global employs individuals, engaged in inter-State commerce and/or the production of goods for inter-State commerce, with an annual gross sales and/or business volume of at least $500,000.00.

10.

Insight Global may be served with process through C T Corporation, Registered Agent, 289 S. Culver Street, Lawrenceville, Georgia, 30043-4805.

11.

Defendant Paypal Holdings, Inc., ("Paypal") is a Delaware financial technology corporation operating an online payment system that serves as an alternative to traditional paper payment methods affecting inter-State commerce through its facilities across the United States and subject to the Court's jurisdiction with a principle office located in San Jose, California.

12.

Defendant Paypal operates a facility and corporate headquarters located at 2211 North First Street, San Jose, California 95131.

13.

Paypal is an "employer" with the meaning of, among other laws, the FLSA, 29 U.S.C. § 203(d).

14.

Paypal is covered by the FLSA because Paypal employs individuals, engaged in inter-State commerce and/or the production of goods for inter-State commerce, with an annual gross sales and/or business volume of at least $500,000.00.

15.

Paypal may be served with process through the Corporate Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

16.

During the course of Novak's employment, Defendants Paypal and Insight Global *jointly* supervised and managed Novak, determined Novak's rate and method of compensation, exercised authority to hire and terminate Novak's employment, prepared Novak's payroll, invested in Novak's equipment, determined Novak's permanence and exclusiveness, as well as otherwise controlled the terms and conditions of Novak's employment.

17.

Defendant Robert Yulang ("Yulang")—Asian-American male—is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

18.

Yulang is and was, at all relevant times, Paypal's Senior Manager for Sales Compensation and Systems, involved in the day-to-day operation of Paypal and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Paypal.

19.

At all relevant times, Yulang supervised Novak and participated in the unlawful and tortious conduct described herein.

20.

Yulang may be served with process at Paypal's corporate office located at 2211 North 1st Street, San Jose, California 95131.

## III. FACTUAL ALLEGATIONS

21.

Global Insight provides professional staffing services to companies, such as Paypal, throughout the United States.

22.

Paypal provides financial technology and online payment systems to individuals and business throughout the United States.

23.

Novak is a  is a fifty-six (56) year old African-American female.

24.

Following high school, Novak obtained a Bachelor of Science in Finance from the University of Tennessee, Chattanooga.

25.

After completing education, Novak served in several professional positions in the finance industry, including, but not limited to, Financial Analyst with ZF Wind Power, Senior Financial Analyst with FiberLight, LLC, Financial Analyst with Cisco, Director of Trade Finance with EQUIPXP, LLC, and Financial Advisor with Edward Jones.

26.

On or about November 23, 2020, Novak and Insight Global entered into the Contract Employee Agreement ("Agreement"), wherein Novak agreed to provide professional services, at the direction of Insight Global and Paypal, to Paypal, who retained Insight Global to fulfill certain business needs.  Pursuant to the Agreement, Novak was supposed to be paid $48.00 per regular hour and $72.00 per overtime hour, or other rate as determined by Insight Global.  In this regard, Novak was required to maintain a record of hours on behalf of Paypal, which was required to submit verified Time Sheets to Insight Global.  Novak agreed to work the hours required to complete the Assignment, as determined by Paypal.

27.

Pursuant to the Agreement, beginning on or about December 7, 2020, Novak began working, on assignment from Insight Global, for Paypal as a Compensation Analyst responsible for calculating commissions for global sales team, overseeing finances, maintaining in-depth financial information, complying with guidelines and regulations, building pay structures, reconciling financial information, and other financial duties assigned by Paypal.

28.

During the course of employment with Paypal and Global Insight, Novak diligently and professionally performed all duties and assigned tasks. Because Novak was required to perform the duties of a Compensation Analyst and a Finance Manager, Novak could not complete all professional duties during a normal 40-hour workweek. As Paypal eliminated Team Leaders, Novak was required to manage multiple projects without any training. Moreover, because of the global locations of the entities serviced, Novak was required to work across several time zones, attending all meetings, overseeing operations, and provide "hands on" professional services across the globe.

29.

While employed as a Compensation Analyst, Novak's scheduled varied on a daily basis depending on Defendants' professional needs.  To complete the assigned professional duties and responsibilities, Novak worked seven (7) days per workweek.  Although Novak worked every Saturday and Sunday, Yulang (Asian-American male) forced Novak to submit Time Sheets on Fridays, preventing Novak from submitting required hours worked on weekends to complete professional duties and responsibilities.  Generally, Novak worked upwards of twelve (12) hours per day, Monday through Friday, and approximately two (2) to ten (10) hours per day, on Saturdays and/or Sundays.  Whenever Novak requested to include hours worked on Saturdays and Sundays on the Time Sheet, Yulang responded, "You're blowing my budget," while consistently increasing Novak's workload.

30.

Despite Novak's diligent, competent, and uncompensated performance, Yulang created a hostile work environment.  Yulang pressured Novak to take detailed notes of every meeting despite certain language barriers created by global offices.  Nevertheless, whenever Novak created detailed reports, Yulang would respond, "It's too long.  Just give me one line."  Moreover, Yulang never utilized, presented, or published the information he demanded that Novak provide.

31.

Likewise, Yulang required Novak to perform professional duties outside the scope of the position.  For example, Yulang stated that Novak had to "tell them what was going on inside sales and report to them everything that's happening on the team."     However, Novak's predecessor, Monika Wodyk ("Wodyk") (Caucasian/Irish) who was on maternity leave, was not required to report to Yulang in a similar manner.  Although Wodyk only oversaw the strategic operations, when Novak performed in Wodyk's role, Defendants required Novak to perform commission calculations in addition to the Wodyk's former professional duties.

32.

Despite the overwhelming professional duties and micromanagement, Yulang refused to provide Novak with professional assistance.  Rather, Yulang insisted that Novak could not ask for professional assistance and repeatedly stated that Novak must "stand on your own."  Denied professional resources, Novak was forced to figure out how to complete professional duties.

33.

While refusing to provide professional assistance, Yulang demanded that Novak to perform unusual tasks without any guidance.  For example, Yulang singled-out Novak in a technical meeting and demanded that Novak report all

changes affecting the commission process.  When Novak provided the requested information, Yulang responded negatively.

34.

Yulang also blamed Novak for the professional errors of others within the team.  For example, non-African-American team members made a payroll mistake, resulting in the payroll for the Latin American team being missed.  Although Novak did not make any professional mistakes or errors, Yulang demanded that Novak explain, correct, and report (complete with a Power Point presentation) the errors committed by other team members.  Yulang blamed, without cause of justification, Novak for the errors of the entire team.  And, Yulang required Novak to document any professional error committed by Novak—Yulang did not require other team members to submit similar documents.

35.

Similarly, Yulang routinely insulted and harassed Novak in the presence of co-workers. For example, when Novak utilized a colloquial phrase during a conference call with team members, Yulang made Novak the subject of jokes/ridicule, resulting in the other team members laughing at Novak.  Yulang never subjected the other non-African-American team members to similar ridicule.

Rather, whenever other team members were subject to jokes or ridicule during meetings, Yulang would immediately chastise the source of the joke or ridicule.

36.

Due to Defendants' scheduling practices, unpaid wages, harassment, racial discrimination, and professional mistreatment, it has become increasingly difficult to continue performing diligently and professionally while being denied professional support and proper compensation.

37.

Despite Yulang's racial discrimination, harassment, unpaid wages, and other unlawful employment practices, Novak feared that, if she complained about unlawful employment practices, Defendants would terminate Novak's employment.

38.

Finally summoning the courage, on or about June 10, 2021, Novak complained to Ricardo Gallardo ("Gallardo"), Insight Global's Lead Recruiter, about Defendants' unlawful employment practices. When Novak complained about unlawful employment practices and unpaid wages during a June 10, 2021, phone call, Gallardo stated that Paypal was a "hostile environment" and that Paypal was required to compensate Novak for unpaid overtime and weekend hours. After considering the conversation, on June 11, 2021, Novak sent Gallardo an e-mail,

further documenting Defendants' unlawful employment practices. Although Gallardo would not respond via e-mail, Gallardo stated that he would have someone "get back" with Novak before eventually removing himself from the process. Following the initial phone conversation, Gallardo became very nervous about Novak's complaints and communications with Novak.

39.

Likewise, on June 14, 2021, Novak again complained about unpaid wages, harassment, and discrimination. Specifically, Novak sent Gallardo an e-mail, stating that Novak needed to be compensated for approximately 350 hours of unpaid work and reassigned from the hostile, discriminatory environment. Additionally, Novak sent Scott Day ("Day"), Paypal Senior Vice President, an e-mail, complaining about the professional environment. Similarly, Novak sent Yulang an e-mail, requesting overtime compensation.

40.

On June 14, 2021—the same day Novak complained about unpaid wages and unlawful employment practices—Gallardo advised Novak that her employment was being terminated, immediately.

41.

Following the termination of employment, Novak met with Insight Global's Human Resources team.  During the meeting, Novak again complained about harassment and unlawful employment practices at the hands of Yulang.  In response, Insight Global promised to compensate Novak for the overtime hours worked pursuant to the Agreement.  Although Insight Global repeatedly promised, even after the meeting, to compensate Novak for unpaid overtime hours, Insight Global never made the required payments to Novak.

42.

Like before, on or about June 31, 2021, Novak met with Hannah Beasley ("Beasley"), HR Lead with Insight Global, and Alexis Whitner ("Whitner"), Senior HR Coordinator with Insight Global.  During the meeting, Novak again complained about harassment and unlawful employment practices, including unpaid wages.  In this regard, Beasley simply stated, in a July 1, 2021, e-mail, that she was "escalating the incidents reported between you and [Yulang] to [Paypal's] HR Department."

43.

On September 3, Beasley sent Novak an e-mail, stating that Novak's "claim that [Novak] performed an additional 350 hours of [overtime] for which [Novak was] not compensated is without merit."

44.

After Novak complained to Paypal management about working off-the-clock and advising Insight Global of another employee, Jessica Stevens ("Stevens") (Caucasian Female), working off-the-clock, Paypal directly hired Stevens in August 2021.

45.

Despite Novak's repeated requests, Defendants failed and/or refused to compensate for certain hours worked at the Agreement-mandated FLSA-mandated rates.

46.

While Novak worked as a Compensation Analyst, Defendants required, and were aware that, Novak worked more than forty (40) hours per workweek without compensation at the Agreement-mandated and FLSA-mandated rates for hours worked in excess of forty (40) hours in each workweek.

47.

Rather than compensate Novak at the Agreement-mandated and the FLSA-mandated rates for hours worked in excess of forty (40) hours in each workweek, Defendants failed to compensate Novak for known hours worked on Saturdays and Sundays during the course of employment.

48.

Defendants' failure to properly compensate Novak at the Agreement-mandated and FLSA-mandated rates was knowing and willful.

49.

Other non-African-American employees were treated better than Novak because, among other things, these employees were not denied professional support, denied agreed upon compensation, subjected to constant harassment, and terminated due to race and complaints of racial discrimination, harassment, and retaliation.

50.

Defendants terminated Novak's employment and punished Novak immediately after Novak had the audacity to complain about being subjected to racial discrimination, harassment, unpaid wages, as well as retaliation, at the hands of Defendants.

51.

Novak was qualified and capable of continued service and employment as a Compensation Analyst.

52.

As a result of Defendants' unlawful actions, Novak has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

## IV.  CLAIMS FOR RELIEF

### COUNT I:
### FAILURE TO PAY OVERTIME WAGES
### IN VIOLATION OF THE FLSA
**(Against Defendants Insight Global and Paypal)**

53.

The FLSA requires, with certain exceptions that are inapplicable to the above-captioned case, that employers pay their employees time and a half for hours an employee works in excess of a 40-hour workweek.

54.

During the relevant period, Novak was an employee, within the meaning of the FLSA, of Insight Global and/or Paypal, who are employers and covered by the FLSA.

55.

During the relevant period, the relationship between Novak, Insight Global, and Paypal was an employer-employee relationship within the meaning of the FLSA, such that a cause of action exists based upon the failure to pay FLSA-mandated rates for hours worked in excess of forty (40) hours during workweeks.

56.

Beginning on or about December 7, 2020, Novak began serving as a Compensation Analyst, earning $48.00 per regular hour and $72.00 per overtime hour pursuant to the Agreement, for Insight Global and Paypal.

57.

Although Novak worked upwards of twelve (12) hours per day, Monday through Friday, and approximately two (2) to ten (10) hours per day, on Saturdays and/or Sundays, as a Compensation Analyst, Insight Global and Paypal never paid Novak for the time Novak worked on Saturdays and Sundays or other certain hours worked off-the-clock.

58.

During the relevant time period, Novak regularly worked more than forty (40) hours per workweek and, therefore, Novak was entitled to be paid one-and one-half times the regular rate of pay for all hours worked over forty (40) hours in the applicable workweeks.

59.

However, during the course of Novak's employment, Insight Global and Paypal routinely and consistently failed to compensate Novak for the hours worked in excess of forty (40) hours per workweek.

60.

Insight Global and Paypal knew, or showed reckless disregard for the fact, that Insight Global and Paypal failed to pay Novak overtime compensation in violation of the FLSA.

61.

Insight Global's and Paypal's actions, policies, and/or practices described herein violate the FLSA, 29 U.S.C. § 207, by regularly and repeatedly failing to compensate Novak at the mandated overtime rate.

62.

Insight Global and Paypal conduct in violation of the FLSA was both willful and in bad faith.

63.

As the direct and proximate result of Insight Global's and Paypal's intentional, willful, and unlawful conduct when refusing to compensate Novak for the overtime hours worked, Novak has suffered loss of income and other damages.

64.

Pursuant to the FLSA, 29 U.S.C. § 216, Novak is entitled to unpaid overtime wages, liquidated damages, and reasonable attorneys' fees, and costs incurred in connection with this claim.

**COUNT II:**
**RACE DISCRIMINATION**
**IN VIOLATION OF SECTION 1981**
**(Against All Defendants)**

65.

Section 1981 prohibits employers from discriminating against employees because of race and/or national origin.

66.

Defendants violated Section 1981, such that a cause of action exists where discrimination on the basis of race was the causative agent of adverse actions directed at Novak by Defendants.

67.

As an African-American female, Novak is a member of a protected class under Section 1981.

68.

At all times relevant to this action, Novak was qualified for her position and diligently performed as a Compensation Analyst while employed by Insight Global and Paypal.

69.

Furthermore, Novak's skill, experience, and performance were at least on par with other non-African-American, similarly-situated Insight Global and Paypal employees.

70.

At all times relevant to this action, the relationship between Novak, Insight Global, and Paypal was a relationship of "employee" to "employer," such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

71.

At all times relevant, Insight Global and Paypal acted by and through its agents and employees, including, but not limited to, Yulang, each of whom acted in the course and scope of their employment with and for Insight Global and Paypal.

72.

Despite Novak's diligent work performance, Defendants intentionally discriminated against Novak on the basis of his race by, among other things, subjecting Novak to unfair treatment compared to similarly-situated non-African-American employees, denying Novak professional support, requiring Novak to complete tasks outside of the Compensation Analyst position, subjecting Novak to

public ridicule, disciplining Novak for the professional errors of other team members, and refusing to pay Novak at the FLSA-mandated and Agreement-mandated rates unlike other, non-African-American Compensation Analyst based upon race.

73.

Consequently, Novak was treated less-favorably than similarly-situated non-non-African-American employees of Insight Global and Paypal in violation of Section 1981.

74.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Novak's employment.

75.

Defendants' actions constitute unlawful race discrimination in violation of Section 1981.

76.

Defendants have willfully and wantonly disregarded Novak's statutory rights and Defendants' discrimination was undertaken in bad faith.

77.

As a direct and proximate result of Defendants' unlawful employment practices, which were intended to cause Novak harm and/or were committed with reckless disregard of the harm caused to Novak, in derogation of Novak's Federally-protected rights, Novak has suffered and continues to suffer the indignity of race discrimination, the invasion of his right to be free from race discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish.

78.

Defendants' intentional and illegal conduct entitles Novak to compensatory damages, as well as any and all other remedies available under Section 1981.

79.

Defendants' actions with regard to Novak demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Novak to an aware of punitive damages to deter, punish, and penalize Insight Global and Paypal for and from similar future conduct.

## COUNT III
## RETALIATION
## IN VIOLATION OF THE FLSA AND SECTION 1981
**(Against All Defendants)**

80.

The FLSA and Section 1981 prohibit employers from retaliating against an employee who opposes an employment practice prohibited by, or exercises or attempts to exercise rights under, the FLSA and/or Section 1981.

81.

During the relevant period, the relationship between Novak, Insight Global, and Paypal was an employer-employee relationship within the meaning of the FLSA and Section 1981, which covered Insight Global and Paypal, such that a cause of action exists where retaliation on the basis of opposing and/or reporting unlawful employment practices is alleged to be the causative agent of adverse employment actions directed to Novak by Defendants.

82.

Defendants unlawfully and knowingly failed to pay the FLSA-mandated rate for hours worked on weekends and in excess of forty (40) hours during certain workweeks.

83.

Defendants unlawfully and knowingly discriminated against Novak on the basis of race.

84.

Novak complained to Defendants and Defendants' employees, including, but not limited to, Yulang, Gallardo, and Day, about unlawful employment practices in violation of the FLSA and Section 1981.

85.

On the same day as Novak's complaints about unlawful employment practices in violation of the FLSA and Section 1981, Defendants terminated Novak's employment.

86.

The effect of Defendants' actions has been to suspend and deprive Novak of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Novak because of the exercise of Novak's Federally-protected rights

87.

Defendants' adverse employment action against Novak constitutes unlawful retaliation in violation of, *inter alia*, the FLSA and Section 1981.

88.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Novak harm and/or were committed with reckless and wanton disregard of the harm caused to Novak in derogation of Novak's Federally-protected rights.

89.

Defendants' discriminatory and retaliatory actions were undertaken in bad faith.

90.

The retaliation to which Novak was subjected by Defendants entitles Novak to all appropriate relief afforded under the law.

91.

As a result of Defendants' intentional and unlawful conduct, Novak has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to reputation, other indignities, as well as past and future pecuniary losses.

92.

Defendants' actions with respect to Novak have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care and, thus, Novak is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

**COUNT IV**
**BREACH OF CONTRACT**
**IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA**
**(Against Insight Global)**

93.

Under Georgia law, a contract is an agreement between two or more parties for the doing or not doing of some specified thing and an action at law lies for breach of a contract and that damages are given as compensation for the injuries sustained.

94.

On or about November 23, 2020, Novak and Insight Global entered into the Agreement, wherein Novak agreed to provide professional services to Paypal, who retained Insight Global to fulfill certain business needs, in exchange for $48.00 per regular hour and $72.00 per overtime hour.

95.

The Agreement, which is supported by good and valuable consideration, constitutes Insight Global's unconditional promise to pay Novak for professional services provided to Paypal.

96.

Based upon Insight Global's promises and the Agreement, Novak provided diligent and competent professional services to Paypal pursuant to the Agreement while forgoing alternative employment opportunities.

97.

Novak performed pursuant to the terms and conditions of the Agreement.

98.

Notwithstanding Novak's requests and demands for compensation pursuant to the Agreement, Insight Global breached the Agreement when refusing and/or failing to compensate Novak for hours worked on Saturdays and Sundays, as well as a the agreed upon rate for overtime hours.

99.

As a direct and proximate result of Insight Global's breach of the Agreement, Novak has been damaged in the amount of the unpaid compensation, interest, and litigation expenses associated with the collection of the admitted indebtedness.

100.

Because Insight Global has acted in bad faith, been stubbornly litigious, and/or caused Novak unnecessary trouble and expense when breaching the Agreement, Novak is also entitled to recover the expenses of litigation associated with Insight Global's breach of contract.

## **PRAYERS FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully demand a trial by jury and request the following relief:

(a)    That the Clerk of the Court issue summons and original process, served upon Defendants and any other person or entity the Court deems necessary in accordance with the law;

(b)    That the Court grant declaratory judgment that Plaintiff's rights under, among other laws, the FLSA and Section 1981 were violated;

(c)    That the Court award Plaintiff compensatory damages for all injuries suffered as a result of Defendants' unlawful conduct;

(d)    That the Court award back pay, including, but not limited to, unpaid back wages, lost income, bonuses, incentive compensation, pension, social security, and other benefits in amounts to be shown at trial;

(e)     That the Court award liquidated damages equal to back pay and lost

benefits based upon Defendants' willful violations of the FLSA and

Section 1981;

(g)     That the Court award punitive damages in an amount reasonable and

commensurate with the harm done and calculated to be sufficient to

deter such future conduct;

(h)     That the Court award pre-judgment interest on any monetary award;

(i)     That the Court grant a trial by jury as to all triable issues of fact; and

(j)     Further and additional relief as may be just and appropriate.

Respectfully submitted, this 15th day of December, 2021.

MOLDEN & ASSOCIATES

*/s/ Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Rhonda Washington Novak*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| RHONDA WASHINGTON NOVAK, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO._____ |
| INSIGHT GLOBAL, LLC,<br>PAYPAL HOLDINGS, INC., and<br>ROBERT YULANG, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned counsel certifies that this document has been prepared in accordance with the Local Rules and that the foregoing Complaint for Damages has been filed with the Clerk using the CM/ECF system which will notify the attorney(s) of record.

Respectfully submitted, this 15th day of December, 2021.

MOLDEN & ASSOCIATES

*T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406